1              IN THE UNITED STATES DISTRICT COURT
                  MIDDLE DISTRICT OF FLORIDA
2                       TAMPA DIVISION


3

        UNITED STATES OF AMERICA,     :
4                                     :
              Plaintiff,              :
5                                     :
                                      : CASE     8:16-cr-407
6       vs.                           : NO.:
                                      :
7                                     : DATE:   03/20/2017
        HARINSON MORENO CASQUETE,     :
8                                     : TIME:   12:34 p.m.
              Defendant.              :
9       -------------------------       PAGES:  1 - 25


10


11                  TRANSCRIPT OF SENTENCING
              BEFORE THE HONORABLE JAMES D. WHITTEMORE
12                 UNITED STATES DISTRICT JUDGE


13

        For the Government:
14
                    DANIEL BAEZA, ESQ.
15                  United States Attorneys Office
                    400 N. Tampa Street
16                  Suite 3200
                    Tampa, Florida  33602
17
        For the Defendant:
18
                    ADAM NATE, ESQ.
19                  Federal Public Defenders Office
                    400 N. Tampa Street
20                  Suite 2700
                    Tampa, Florida  33602
21

22      Court Reporter:  Lynann Nicely, RPR, RMR, CRR
                    Official Court Reporter
23                  801 N. Florida Avenue, 13B
                    Tampa, Florida 33602
24

25

1              P R O C E E D I N G S

2          THE COURT:  Good afternoon.  We're here in the

3     matter of United States vs. Harinson Moreno

4     Casquete.  Let's get the appearances, please.  For

5     the government?

6          MR. BAEZA:  Good afternoon, Your Honor, Dan

7     Baeza for the United States.

8          THE COURT:  Good afternoon.  And for the

9     defendant?

10          MR. NATE:  Good afternoon, Your Honor, Adam

11     Nate on behalf of Mr. Moreno Casquete.

12          THE COURT:  Good afternoon.  And we have the

13     assistance of an interpreter.  Let's have him sworn,

14     please.

15          [Interpreter sworn]

16          INTERPRETER:  Javier Keough.

17          THE COURT:  I have received and reviewed the

18     pre-sentence investigation report prepared by the

19     United States Probation Office.  The record should

20     reflect that pursuant to a plea agreement the

21     defendant pled guilty to Count One of the indictment

22     in which he is charged with conspiracy to possesses

23     with intent to distribute five or more kilograms of

24     cocaine while on board a vessel subject to the

25     jurisdiction of the United States.  His guilty plea

1    has been accepted and he has been adjudicated guilty

2    of that offense.

3         Mr. Nate, you had an opportunity to review the

4    presentence report with your client?

5         MR. NATE:  Yes, I did, with the assistance of

6    an interpreter, Your Honor.

7         THE COURT:  Thank you, sir.  There appear to

8    be no objections to the presentence report or the

9    application of the advisory guidelines.  Mr. Baeza,

10   is that right?

11        MR. BAEZA:  That's right, Your Honor.

12        THE COURT:  Mr. Nate?

13        MR. NATE:  Yes, Your Honor.

14        THE COURT:  Does the government move for the

15   additional level for acceptance of responsibility?

16        MR. BAEZA:  Yes, sir.

17        THE COURT:  That motion is granted.  The

18   advisory guidelines apply as follows.  We have a

19   total offense level of 35, criminal history category

20   I, that results in an advisory range of 168 to

21   210 months, to be followed by five years of

22   supervised release.  There is a fine range of

23   $40,000 to $10 million and a $100 special

24   assessment.

25        Mr. Nate, what say you and your client?

1          MR. NATE:  Thank you, Your Honor.  Like so

2     many of these types of cases, Your Honor, they do

3     have similar stories and similar fact patterns

4     especially when it comes to background.  And as an

5     initial matter I would ask Your Honor to take into

6     consideration Mr. Moreno Casquete's poverty, his

7     family instability, and the lack of legitimate

8     opportunities, take that into account.  Those items

9     are spelled out in the presentence report,

10    specifically in Part C of the offender

11    characteristics, personal and family data.

12         As the late Chief Justice William Rehnquist

13    said in a decision in 1982, "A stable, loving home

14    life is essential to a child's physical, emotional

15    and spiritual well being.  It requires no citation

16    of authority to assert that children who are abused

17    in their youth generally face extraordinary problems

18    developing into responsible, productive citizens.

19    The same can be said of children who though not

20    physically or emotionally abused, are passed from

21    one foster home to another with no constancy of

22    love, trust, or discipline."

23         There is an analogy in that quote to this

24    case, Your Honor.  We can take it a step further and

25    say that it wouldn't require any citation to

1    authority to assert that someone in Mr. Moreno

2    Casquete's situation, the life he was born into of

3    poverty, family instability, and lack of local

4    legitimate opportunities, would increase the

5    likelihood to partake in the exact type of conduct

6    that he partook in this case.

7        It was a fishing community that he was

8    connected to.  He received a job as a fisherman and

9    worked in legitimate employment in the fishing

10   industry as part of a ship and he was the ideal

11   recruit for cartels in South America to take to

12   transport and traffic in drugs which is exactly what

13   we see not only in this case but in wave after wave,

14   year after year, like clockwork during certain times

15   of the year when these boats head out from South

16   America to Central America with drugs that are

17   destined for the United States.  O we ask Your Honor

18   to take those items into consideration as part of

19   Mr. Moreno Casquete's personal history and

20   characteristics when considering sentencing him

21   under 18 United States Code, Section 3553.

22       In addition to that, Your Honor, I would just

23   to make four brief points in support of our

24   requested sentence of 132 months, 132 month sentence

25   is what we are requesting.

1          The first point, Your Honor, is that

2     Mr. Moreno Casquete did cooperate in this case and

3     had a lengthy and specific debriefing where he

4     acknowledged his participation, his conduct,

5     identified to the best of his ability the people

6     that were involved with him in the conduct that he

7     pled guilty to.

8          Although there is no 5K motion from the

9     government that's been filed today, we are hopeful

10    that some of the information he provided will come

11    back and he will be able to be resentenced under

12    Rule 35.

13         We are in the midst of scheduling another

14    debriefing in this case to do some followup.  The

15    agent was not able to accomplish that, our schedules

16    conflicted and we were not able to accomplish that

17    prior to this hearing, but we are hoping to schedule

18    that prior to Mr. Moreno Casquete going to prison.

19         But Your Honor can certainly take his

20    cooperation into account under some of the 3553

21    factors.  I would say that like nearly all the

22    defendants in these type of cases, Mr. Moreno

23    Casquete was worried about cooperating.  He has

24    informed me that some of his family members have

25    been threatened by people in the community that are

1    involved in the drug trafficking trade.  So

2    cooperating even though he's thousands of miles away

3    from home does have consequences that should be

4    taken into account.  The risk factor should be taken

5    into account.

6         The second point I would like to make, Your

7    Honor, is the relative harshness of the guideline

8    provisions in this case, especially in comparison to

9    other guideline provisions, should also be taken

10   into consideration and Your Honor can take those

11   into consideration and should do so, given that one

12   of the goals of the Sentencing Reform Act was to

13   provide for proportionality in punishment amongst

14   offenses of different levels of seriousness and I'm

15   arguing that the provision -- the guideline

16   provisions in this case fail that goal.  And a few

17   brief comparisons make that point I think quite

18   clearly.

19        For example, a defendant who used a computer

20   to entice a 12-year-old to engage in illegal sexual

21   activity but was caught before actually having sex

22   with a 12-year-old child would, pursuant to Section

23   2G1.3(a)(3) and (b)(3) receive an adjusted offense

24   level of 30, which is eight levels below Mr. Moreno

25   Casquete.

1          A defendant who attempted to commit first

2     degree murder or committed rape resulting in more

3     serious but less than permanent bodily injury or who

4     held a person in involuntary servitude for over a

5     year by use of a weapon and did cause permanent

6     bodily injury, would all have adjusted offense

7     levels lower than Mr. Moreno Casquete's, in that

8     case up to five levels lower in those types of

9     cases.

10          And that's especially significant in a case

11     like this where there has been no indication that

12     Mr. Moreno Casquete engaged in any sort of violent

13     conduct.  His job -- he was hired to take illegal

14     drugs from Point A to Point B.  And while we

15     acknowledge the seriousness of the significance of

16     that and the great harm that's inflicted on people

17     who are addicted to cocaine here in the United

18     States, the harm that Mr. Moreno Casquete played

19     specifically in transporting those drugs and in

20     those people's addictions should not be overstated

21     and his conduct should not be over-punished,

22     especially in light of the goal, the professed goal

23     of the Sentencing Reform Act to provide for

24     proportionality and punishment.

25          The third point, Your Honor, is the

1    deportation that Mr. Moreno Casquete is very likely

2    to undergo after he serves his prison sentence.  And

3    that's not insignificant.  To quote another Supreme

4    Court Justice, Justice Jackson, he noted in a

5    descent over 60 years ago that a person who is

6    forcibly deported is punished with a life sentence

7    of banishment in addition to the punishment which a

8    citizen would suffer for identical acts.

9        And in similar situations there have been

10   courts who have granted downward variances, given

11   this collateral consequence of deportation and the

12   collateral consequences that a defendant can face

13   due to his deportable status or his alien status

14   such as the possibility of ineligibility for early

15   release, not being able to serve a prison sentence

16   in a minimum security facility, or not qualifying

17   for reduced sentence credits for participation in

18   residential drug or alcohol abuse programs.

19       We've seen this in these types of cases where

20   oftentimes a client in Mr. Moreno Casquete's

21   position aren't even allowed to work to earn some

22   sort of money to send back to their families because

23   of their status.  We've tried to put language in the

24   record and I will be recommending and asking the

25   court to put that language on the record, but some

1   prisons my clients goes to I'm in contact with them

2   they're not able to work, and some places they are

3   age to work.  So we'd ask Your Honor to take that

4   into consideration when giving him his final

5   sentence.

6       We do believe that a 132-month sentence at

7   this stage is a reasonable and just sentence.  It

8   addresses the 3553 factors, promotes respect for the

9   law, takes into account the nature and circumstances

10  of the offense and Mr. Moreno Casquete's personal

11  history, poverty, family background.  It does

12  reflect the relatively seriousness of the offense

13  and principles of proportionality and certainly will

14  protect the public from further crimes of the

15  defendant as he will be either in prison or deported

16  back to South America and not being able to return.

17      The fourth and final point, Your Honor, is

18  remorse and I'm going to let Mr. Moreno Casquete

19  address that directly with the court.  The only

20  other thing I would add before sitting down is we

21  would ask the court to recommend Fort Dix.  It does

22  appear that our clients are able to still work when

23  they go to Fort Dix.  We'd also ask Your Honor to

24  make a finding on the record, I believe the United

25  States typically joins us in this, that Mr. Moreno

1    Casquete was paroled into the United States and did

2    not illegally enter the United States.

3         With that, Your Honor, I'll hand it off to

4    Mr. Moreno Casquete who would like to make a

5    statement.

6         THE COURT:  All right.  Thank you, Mr. Nate.

7         Yes, sir, if there is anything you would like

8    to say, Senor Moreno.

9         THE DEFENDANT:  With all respect, Your Honor,

10   I feel super badly for what I've done.  I'm

11   remorseful for everything that I've done.  I would

12   like for the United States to forgive me for what I

13   did.  I did this practically out of necessity -- my

14   kids, my children, that's economic necessities, all

15   of that compelled me to do this.  But I would like

16   to be given the opportunity to learn something here

17   in the United States, a trade to be able to move my

18   family forward and not to look back on my past

19   though I know that what I did was a very serious

20   thing against the United States.  And I would like

21   God to forgive me for what I did.

22        I ask you for clemency, Your Honor, that you

23   help me to be able to work at the prison and not

24   have any benefits denied there so that I'm able to

25   physically and morally be allowed to work so that I

1       can send money back to my family back in Colombia.

2       At this time my family is under a death threat.  It

3       has me very worried.  I have not been able to talk

4       with them.  I fear the worst.  That's why, Your

5       Honor, I ask you for clemency, help me.  That's all.

6       Thank you.

7               THE COURT:  Thank you, sir.

8               Mr. Baeza?

9               MR. BAEZA:  Your Honor, per the terms of the

10      plea agreement, we do not have an objection to the

11      defendant's request for the low end of the

12      applicable guidelines which would be 168 months.

13              Mr. Nate has asked for 132 months.  We would

14      be opposed to that request.  A downward variance of

15      some degree we wouldn't be opposed to, but we think

16      that 132 months is too significant of a downward

17      departure.

18              Mr. Nate as always has spoken very eloquently

19      and very well about the nature of sentencing, the

20      purposes behind sentencing and the proportionality

21      of sentencing.  I would direct the court to Sections

22      5H1.6 and 5H1.12 of the sentencing guidelines,

23      specifically the provisions that say that familial

24      obligations or lack of guidance during one's youth

25      are not factors for consideration as to whether to

1    give a downward variance.

2         However, I would also argue that under

3    3553(a)(2), there are provisions in those

4    subsections which do give some basis for at least

5    some type of variance for Mr. Moreno Casquete.  In

6    particular, the fact that he has already completed

7    the eleventh grade, he was previously gainfully

8    employed.  By indications in the PSR he was

9    regularly employed, taking approximately two trips

10   per month and being paid for it.  Not as much as

11   what we'd see in the United States, but he was

12   gainfully employed.  So there is some degree of

13   educational and vocational training that can be

14   provided such that this person can be gainfully

15   employed in the future in Colombia and not have the

16   incentive to be involved in these types of high risk

17   and dangerous ventures.

18        As to the consideration of proportionality

19   that Mr. Nate described, we also submit that these

20   factors, these considerations have been well

21   documented and well analyzed by the U.S. Sentencing

22   Commission and certain determinations have been

23   made.  As to the argument about child exploitation,

24   we agree that a base offense level for that kind of

25   conduct should be high.  But the Sentencing

1    Commission also made a consideration that the high

2    amount of drugs involved in these types of trips or

3    drug trafficking in general affects many people.  In

4    contrast the child exploitation provision affects

5    one victim or multiple victims.  So that

6    consideration was made, it was addressed and that's

7    why 2D1.1 is written the way it is.

8         In that same line of reasoning, I would direct

9    the court's attention to our sentencing memorandum

10   that's Docket 70, specifically page 10 and footnote

11   2, and that references the specific estimates of the

12   value of the drugs involved here.  This is based on

13   an article cited by counsel for Mr. Arroyo Palomino,

14   specifically the wholesale value would be estimated

15   to be between eleven and a half and $23 million,

16   with a street value once it's diluted and

17   distributed on the streets of approximately

18   $172.5 million.  This is significant, this is

19   serious.  And so the sentencing factors must take

20   into account the seriousness of this offense and the

21   effect that it has on communities and the cycle that

22   it perpetuates.

23        But I do agree with Mr. Nate that there is

24   some happy medium here between the low end of the

25   guidelines and what they're requesting such that

1    this defendant, Mr. Moreno Casquete, could receive

2    the educational and vocational training he needs,

3    can hopefully provide some type of financial support

4    to his family in Colombia by working here in a

5    UNICOR facility, and commit no further crimes.

6         I do not, sitting here -- standing here today

7    I do not believe that he is a potential repeat

8    offender, especially with the proper programs from

9    the Bureau of Prisons.  I believe this person did

10   act out of financial necessity and I am hopeful that

11   at some point in the future the FBI agent and I who

12   were involved in this case, we've worked together

13   several times and we're hopeful at some point in the

14   near future we would be back before you for a

15   Rule 35.

16        THE COURT:  Could you elaborate on the extent

17   and nature of the defendant's cooperative efforts?

18        MR. BAEZA:  Yes, Your Honor.  Mr. Moreno

19   Casquete proffered with the case agent as to his

20   involvement not only to the conspiracy, the actual

21   charged conspiracy, but also individuals responsible

22   for organizing the trip, recruiting the mariners

23   involved, and actually dispatching them.

24        The next step is conducting interviews where

25   individuals are identified, determining whether

1    there are other cooperating defendants who are able

2    to identify the same people on other interdictions,

3    in addition to any other evidence that could be

4    acquired, whether that be flight records, financial

5    records, judicial intercepts in Colombia or

6    elsewhere, location information based on Colombian

7    surveillance or third-party cooperation -- although

8    that's not a factor in this case -- and we just take

9    the next step.

10        But the initial factor here is determining who

11   was responsible for dispatching this trip and seeing

12   whether Mr. Moreno Casquete can identify those

13   individuals and we're in that process, Your Honor.

14        THE COURT:  Thank you.  Let me begin by

15   acknowledging the sentencing factors in Section

16   3553(a) of Title 18, beginning with the background

17   and characteristics of the defendant which are set

18   forth in the presentence report.  They are

19   unfortunately fairly unremarkable when comparing his

20   background and characteristics to the dozens and

21   dozens if not hundreds of defendants that I have

22   seen charged with identical offenses.  They come

23   from impoverished backgrounds comparatively speaking

24   to those enjoyed in this country.

25        Most are employed in the fishing industry,

1    earning considerably less in terms of wages to

2    anything that is familiar with any of us in this

3    country.  Many of them live in structures without

4    plumbing, without electricity, without running

5    water, without basic utilities.  And of course with

6    children and familial obligations individuals like

7    this defendant are caught up in the temptation to

8    make a considerable amount of money compared to what

9    they would otherwise earn for a lifetime of work in

10    the fishing industry.

11        That is nothing other than an explanation, an

12    understanding for why they engage in this activity.

13    Certainly isn't a justification for doing that.  My

14    point being that having presided over dozens and

15    dozens if not hundreds of sentencing hearings

16    involving defendants who are virtually identical to

17    this defendant in terms of their background and

18    characteristics, in contemplating what is the

19    appropriate sentence, one that is sufficient but not

20    greater than necessary to achieve the statutory

21    purposes, I found myself returning to the basic

22    notion of how much time is enough.

23        We have an individual sitting in a foreign

24    courtroom listening to foreign-speaking lawyers,

25    judges, a system that is foreign to them.  He never

1    intended to be in this country, he was paroled into

2    this country; but for the interdiction laws of this

3    country he would not be here.

4         The irony of these cases is that most of these

5    defendants will have an opportunity to earn wages

6    while in prison, more than they likely would have

7    earned had they never engaged in this activity and

8    remained in the fishing business.

9         Notwithstanding, the sentence must reflect the

10   seriousness of the offense.  And by virtue of the

11   statutory minimum mandatory penalty the Congress has

12   deemed appropriate in cases such as this, it

13   underscores the seriousness of this offense, the

14   impact of cocaine on our society, both economically

15   and otherwise.  But for these go fast ventures, the

16   supply of cocaine would I presume be substantially

17   less.

18        The sentence should reflect that as well as

19   promote respect for the law, act as a deterrent, and

20   protect the public.  The last factor I don't think

21   is as important in this case as the others.

22   Deterrence is important.  While statistically this

23   defendant is not likely to re-offend, I have

24   unfortunately seen defendants re-offend because of

25   the temptation of earning so much money.

1          The sentence should also reflect and promote

2     respect for the law.  We would hope that these

3     sentences become known to those in Colombia who

4     might otherwise engage in this conduct.  Indications

5     are from what I have heard and presentations in this

6     courtroom that that has occurred, which more likely

7     than not explains the increase in the compensation

8     to the mariners who engage in this activity.

9          This defendant has cooperated, as outlined by

10    Mr. Baeza.  I have independently looked at this file

11    n analyzing whether he might also be eligible for a

12    minor role adjustment under the guidelines.  I have

13    determined that he's not and would not be because

14    under the De Varon analysis he is only being held

15    accountable for the conduct in which he individually

16    engaged in, essentially what he is being held

17    accountable for is equal to that.  And I misspoke,

18    but the two pronged De Varon analysis supports the

19    denial of a minor role adjustment because he's not

20    being held accountable for anything more than what

21    he actually engaged in.

22         I'm also unaware as will be argued in other

23    hearings today and has been touched upon by Mr. Nate

24    that individuals like this defendant do not enjoy

25    the same -- or availability of the same programs and

1    classes that are otherwise made available to the BOP

2    to citizens of this country who are imprisoned.  And

3    because of that disparity, some consideration can be

4    given to the length of the sentence imposed.

5         The fact that he will be deported is another

6    consideration, but I again point out that he did not

7    enter this country illegally, he found himself here

8    as a parolee of this government.

9         Having considered all these matters, it is the

10   judgment and sentence of the court that the

11   defendant be committed to the custody of the Bureau

12   of Prisons for a term of 120 months, which is

13   consistent with the statutory minimum mandatory that

14   the Congress determined is appropriate in cases such

15   as this.

16        This is a substantial variance from the

17   advisory guidelines.  I find those guidelines to be

18   greater than necessary to achieve the statutory

19   purposes of sentencing, considering this defendant,

20   his background and characteristics and all of the

21   other considerations I have alluded to.

22        Ironically it's a sentence less than what the

23   defense asked for, but that really is meaningless to

24   me.  I find that a sentence of 10 years is

25   sufficient but not greater than necessary to achieve

1    the statutory purposes of sentencing.

2         For this record, I have consistently imposed

3    sentences of this nature in cases such as this where

4    a defendant has not otherwise earned a 5K1.1.  And I

5    again point to and rely upon my experience in these

6    cases over the last 12 or 13 years for as long as

7    Operation Panama Express has been operating and I

8    certainly have imposed sentences consistent with the

9    advisory guidelines.

10        But on reflection over the years I have come

11   to the conclusion and I so find that these

12   guidelines are excessive when applied to a first

13   offender such as this defendant in the circumstances

14   of this case.

15        The defense presentation is consistent with

16   what I have heard and seen in other cases, and

17   likewise the government's position is consistent as

18   set forth in the sentencing memorandum.

19        I will recommend institution -- designation,

20   that is, to the institution at Fort Dix for the

21   reasons articulated by Mr. Nate.  I understand that

22   non foreign inmates are able to work there, provide

23   for themselves and their families while

24   incarcerated.

25        The judgment shall recite that the defendant

1    was paroled into the United States and is not here

2    as an illegal alien.

3         Having pronounced sentence, is there any

4    objection to the sentence imposed -- I'm sorry,

5    Mr. Baeza, there were other -- is there another

6    count that needed to be dismissed?

7         MR. BAEZA:  Yes, Your Honor, the United States

8    moves to dismiss Count Two as to this defendant.

9         THE COURT:  Thank you, Count Two is dismissed

10   as to this defendant, that motion is granted.

11        Now having pronounced sentence, is there any

12   objection to the sentence imposed or the manner in

13   which it has been announced?  Mr. Baeza on behalf of

14   the United States?

15        MR. BAEZA:  Yes, Your Honor, the government

16   objects to the magnitude of the variance.

17        THE COURT:  So noted.  Mr. Nate?

18        MR. NATE:  No objection, Your Honor.

19        THE COURT:  Sir, to the extent permitted by

20   your plea agreement -- and I apologize, I didn't

21   complete the sentence.

22        Following his imprisonment, he will serve five

23   years of supervised release, subject to the standard

24   terms and conditions adopted by this court.  Special

25   condition, if he is deported, he shall not re-enter

1   the United States without the express permission of

2   the United States government.

3       This is a qualifying felony; He is to

4   cooperate in the collection of DNA as directed by

5   his probation officer.

6       I'll waive the mandatory drug testing

7   requirements of the Violent Crime Control Act as

8   well as any fine.  He is ordered to pay the $100

9   special assessment which is due immediately.

10      Now, having completed the sentence, same

11  objection, Mr. Baeza?

12      MR. BAEZA:  Yes, Your Honor.

13      THE COURT:  Mr. Nate, any additional

14  objections?

15      MR. NATE:  No objection, Your Honor.

16      THE COURT:  Sir, to the extent permitted by

17  your plea agreement you have 14 days within which to

18  appeal the sentence to a higher court.  In this

19  instance the government also has a right to appeal.

20      Mr. Nate will go over with you the advantages

21  and disadvantages of an appeal as well as the impact

22  of an appeal on your eligibility for a Rule 35

23  motion by the government.

24      Notwithstanding if you decide to appeal, you

25  are entitled to be represented by an attorney and if

1     you're not able to pay a lawyer, the court will

2     appoint one to represent you free of charge and the

3     clerk will accept your Notice of Appeal without

4     payment of the filing fee.

5          You and Mr. Nate will go over this important

6     right.  Make sure that you understand it and you let

7     him know whether you want to appeal or not so that

8     he can either file the appeal in a timely manner or

9     confirm with you that you have decided not to

10    appeal.  And I suggest, as I do in all cases, that

11    the decision by the defendant be documented and

12    confirmed in writing.  Mr. Nate, that's up to you,

13    but that's my recommendation.

14         MR. NATE:  Yes, Your Honor.

15         THE COURT:  Is there anything else that we can

16    address this afternoon in this case, Mr. Baeza?

17         MR. BAEZA:  No, Your Honor.

18         THE COURT:  Mr. Nate?

19         MR. NATE:  No, Your Honor, thank you.

20         THE COURT:  Thank you, gentlemen.  We'll be in

21    recess.

22        (The proceedings adjourned at 1:09 p.m.)

23

24

25

1                    C E R T I F I C A T E

2

3      STATE OF FLORIDA              )

4      COUNTY OF HILLSBOROUGH   )

5          I, Lynann Nicely, RMR, CRR, Official Court

6      Reporter for the United States District Court, Middle

7      District, Tampa Division,

8          DO HEREBY CERTIFY, that I was authorized to and

9      did, through use of Computer Aided Transcription,

10     report in machine shorthand the proceedings and

11     evidence in the above-styled cause, as stated in the

12     caption hereto, and that the foregoing pages,

13     numbered 1 through 25, inclusive, constitute a true

14     and correct transcription of my machine shorthand

15     report of said proceedings and evidence.

16         IN WITNESS WHEREOF, I have hereunto set my hand in

17     the City of Tampa, County of Hillsborough, State of

18     Florida, December 21, 2020.

19

20

21         _____/s/ Lynann Nicely_____
                    Lynann Nicely, RPR, RMR, CRR, CRC
22                  Official Court Reporter

23

24

25